UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| ESTATE OF ANITA E.  MOFFETT; | ) | Docket No. <u>3:21-cv-00508</u> |
| | ) | Jury Trial DEMANDED. |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ASHLAND FACILITY OPERATIONS, LLC | ) | |
|     d/b/a ASHLAND NURSING AND | ) | |
|     REHABILITATION CENTER; | ) | |
| LAVIE CARE CENTERS, LLC d/b/a | ) | |
|     CONSULATE HEALTH CARE; | ) | |
| CMC II, LLC; | ) | |
| ELIZABETH PRICE, individually; | ) | |
| LEANNE KAMPMANN, individually; | ) | |
| ANGELA MCCLAIN, individually; | ) | |
| SANDRA SHEEHAN, individually; | ) | |
| MOHAMMAD FAROOQ, individually; | ) | |
| | ) | |
|     Defendants. | ) | |

## COMPLAINT FOR A CIVIL ACTION ALLEGING MEDICAL MALPRACTICE, NEGLIGENCE, CONVERSION, AND BREACH OF CONTRACT
### (28 U.S.C. § 1332; Diversity of Citizenship)

**COMES NOW** the Plaintiff, Estate of Anita E. Moffett ("Estate"), by and through

counsel, pursuant to the Federal Rules of Civil Procedure ("FRCP"), and for the causes of action

against the Defendants, Ashland Facility Operations, LLC d/b/a Ashland Nursing and

Rehabilitation Center; Lavie Care Centers, LLC d/b/a Consulate Health Care; CMC II, LLC;

Elizabeth Price; Leanne Kampmann; Angela McClain, R.N.; Sandra Sheehan; and Mohammad

Farooq, M.D.; and alleges as follows:

## JURISDICTION AND VENUE

Federal courts are courts of limited jurisdiction. Under 28 U.S.C. § 1332, federal courts may hear cases in which a citizen of one state sues a citizen of another state or nation and the amount at stake is more than $75,000.00. In that kind of case, no defendant may be a citizen of the same state as any plaintiff.

A.    The Plaintiff.

    1.    The Plaintiff, Estate of Anita E. Moffett, is an estate existing and managed in the State of New York. The Estate is managed by its Executor, Vera Courtenay, a citizen of the State of New York, residing at 6 Higbee Road, Hamptons Bay, New York 11946. The subject of the Estate, Ms. Anita E. Moffett ("Ms. Moffett"), was a citizen of New York, residing at 6 Higbee Road, Hamptons Bay, New York 11946 at the time of her death on July 2, 2021.

B.    The Defendants.

    1.    The Defendant, Ashland Facility Operations, LLC, is a citizen of Ohio and Virginia due to its state of incorporation and principal place of business, respectively.

    2.    The Defendant, Lavie Care Centers, LLC, is a citizen of Delaware and Florida due to its state of incorporation and principal place of business, respectively.

    3.    The Defendant, CMC II, LLC, is a citizen of Florida due to its state of incorporation and principal place of business.

    4.    All individual Defendants named in this suit including: Elizabeth Price; Leanne Kampmann; Angela McClain, R.N.; Sandra Sheehan; and Mohammad Farooq, M.D.; are citizens of the Commonwealth of Virginia.

C.    Amount in Controversy.

The amount in controversy in this matter is in excess of $75,000.00, not counting interest

and costs of court, due to Ms. Moffett's pain and suffering, medical expenses, converted funds,

amounts owed due to Defendants' alleged breach of contract, Plaintiff's intent to seek punitive

damages; and the costs incurred to care for Ms. Moffett.

D.    Venue

Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue for this matter, as a

substantial part of the events or omissions giving rise to these claims occurred in Ashland,

Virginia – a city within the Richmond Division of the United States District Court for the Eastern

District of Virginia.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and in accordance

with the procedures in FRCP 38, Plaintiff DEMANDS a jury trial on Counts 1, 3-11, 14, 17, and

18 of this Complaint. Plaintiff waives its right to a jury trial on Counts 2, 12, 13, 15, 16, 19, and

20 of this Complaint.

## PARTIES

1.    Plaintiff, ESTATE OF ANITA E. MOFFETT ("Estate"), is an estate existing and

managed in the State of New York. The Estate is managed by its Administrator, Vera

Courtenay ("Ms. Courtenay"), Ms. Moffett's daughter. Ms. Courtenay is a resident and

citizen of New York. She resides at 6 Higbee Road, Hamptons Bay, New York 11946.

Ms. Moffett was a citizen of New York at the time of her death on July 2, 2021. Ms.

Moffett was a resident of 6 Higbee Road, Hamptons Bay, New York 11946 at the time of

her death.

2.      Upon information and belief, ASHLAND FACILITY OPERATIONS, LLC d/b/a

Ashland Nursing and Rehabilitation Center ("the Facility") is incorporated under the laws

of the State of Ohio with a principal place of business in the Commonwealth of Virginia,

where it does business as Ashland Nursing and Rehabilitation Center.

3.      Upon information and belief, LAVIE CARE CENTERS, LLC ("Consulate') is

incorporated under the laws of the State of Delaware and has a principal place of business

in the State of Florida. Consulate is the parent company of CMC II, LLC and the Facility.

Consulate owns the Facility and, with its subsidiary, CMC II, LLC, controls the entirety

of the Facility's operations, shares the same directors, holds the Facility out to be one of

its locations, and shares its logo with the Facility.

4.      Upon information and belief, CMC II, LLC ("CMC") is incorporated under the laws of

the State of Florida with a principal place of business in the State of Florida. CMC is a

subsidiary of Consulate, which manages Consulate's properties within and without the

Commonwealth. Consulate controls the entirety of CMC's operations, shares the same

directors, and regularly conducts business as "Consulate Management Company."

5.      Upon information and belief, Elizabeth Price ("Ms. Price") is a citizen and resident of the

Commonwealth of Virginia and was the Administrator of the Facility between August 6,

2019 until approximately October 26, 2020.

6.      Upon information and belief, Leanne Kampmann ("Ms. Kampmann") is a citizen and

resident of the Commonwealth of Virginia and served as the Administrator of the Facility

from approximately October 26, 2020 until at least Ms. Moffett's discharge from the

Facility.

7.    Upon information and belief, Angela McClain, R.N. ("Director of Nursing") is a citizen
      and resident of the Commonwealth of Virginia and was employed as the Facility's
      Director of Nursing between August 6, 2019 until Ms. Moffett's discharge from the
      Facility.

8.    Upon information and belief, Sandra Sheehan ("Ms. Sheehan") is a citizen and resident
      of the Commonwealth of Virginia and was employed as the Facility's Business Office
      Manager between February 1, 2021 and February 23, 2021.

9.    Upon information and belief, Mohammad Farooq, M.D. ("Dr. Farooq") is a citizen and
      resident of the Commonwealth of Virginia and was Ms. Moffett's primary care physician
      for the entirety of Ms. Moffett's stay at the Facility.

## FACTUAL ALLEGATIONS

10.   Ms. Moffett was admitted to the Facility on February 17, 2017, by her daughter, Lydia
      Rodriguez ("Ms. Rodriguez").

11.   Ms. Moffett did not have at admission, nor during any point of her stay at the Facility, a
      Power of Attorney, Advanced Medical Directive, or similar document executed by her,
      that established a legal proxy or agent for legal or healthcare decisions.

12.   Ms. Moffett was not, at admission, nor at any point during her stay at the Facility, the
      subject of a Guardianship or Conservatorship proceeding.

13.   The representatives of the Facility who processed Ms. Moffett's admission knew Ms.
      Moffett did not have any agency-granting documents and was not the subject of a
      Guardianship or Conservatorship proceeding at the time of her admission.

14.     Ms. Rodriguez's authority to admit Ms. Moffett to the Facility and sign admissions documents was derived from Va. Code § 54.1-2986, which empowered Ms. Rodriguez to make medical and health care decisions on behalf of her incapacitated mother.

15.     Ms. Rodriguez entered into an Admissions Agreement with the Facility, on behalf of Ms. Moffett, on February 17, 2017.

16.     Ms. Moffett suffered falls during her stay at the Facility, including between August 6, 2019 and February 8, 2021.

17.     Ms. Moffett suffered numerous decubitus ulcers ("pressure injuries") of various stages on her coccyx, sacral region, buttocks, and heels during her stay at the Facility, including between August 6, 2019 and February 8, 2021. EXHIBIT 1.

18.     As a result of Ms. Moffett's pressure injuries, her buttocks fused together – causing Ms. Moffett extreme pain whenever she moved or attempted to pass a bowel movement. EXHIBIT 1.

19.     A number of Ms. Moffett's medications and treatments were not administered as prescribed on several occasions during Ms. Moffett's stay at the Facility, including between August 6, 2019 and February 8, 2021.

20.     It is a universally accepted standard in the nursing home industry, both nationally and within the Commonwealth, that all direct care personnel (e.g. nurses) must chart any actions that involve their patients, particularly with regard to the administration of medications and Activities of Daily Living (i.e. toileting, bathing, eating, etc.) ("ADLs").

21.     Ms. Moffett was mostly or entirely reliant on the Facility's nursing team for assistance with eating, toileting, and other ADLs for a significant portion of the time between August 6, 2019 and February 8, 2021.

22.     Thousands of entries relating to ADLs were left blank in Ms. Moffett's chart – the overwhelming majority of which had no mention of the activities ever being performed.

23.     In the approximately one-month period between December 7, 2020 and January 11, 2021, Ms. Moffett lost 9.8% of her body weight without being on a physician-ordered weight loss plan.

24.     In the approximately one-month period between January 6, 2021 and February 8, 2021, Ms. Moffett lost 8.3% of her body weight without being on a physician-ordered weight loss plan.

25.     In the approximately six-month period between August 10, 2020 and February 8, 2021, Ms. Moffett lost 18.3% of her body weight without being on a physician-ordered weight loss plan.

26.     During the last six months of Ms. Moffett's stay at the Facility, Minimum Data Set ("MDS") reports were completed with Assessment Reference Dates ("ARDs") – or dates used as reference points for the report – of September 17, 2020; December 18, 2020; January 11, 2021; and February 8, 2021.

27.     None of Ms. Moffett's MDS reports conducted during the last six months of Ms. Moffett's stay reported Ms. Moffett as having lost five percent (5%) or more of her body weight within the preceding month or ten percent (10%) or more in the preceding six (6) months.

28.     Weight loss in excess of five percent (5%) within the preceding month or ten percent (10%) within the prior six (6) months of the ARD of an MDS report is a quality measure that is reported to Medicare and flagged on Certification and Survey Provider Enhanced

Reporting ("CASPER") reports generated by State Licensing Officers ("Surveyors") for use during quality of care audits, complaint investigations, and annual inspections.

29.     Surveyors use CASPER reports in determining which patient records to review for quality of care concerns.

30.     Individuals signing and completing MDS reports on behalf of the Facility, including those reports submitted for Ms. Moffett between August 6, 2019 and February 8, 2021, certify the following:

> I certify that the accompanying information accurately reflects resident assessment information for this resident and that I collected or coordinated collection of this information on the dates specified. To the best of my knowledge, this information was collected in accordance with applicable Medicare and Medicaid requirements. I understand that this information is used as a basis for ensuring that residents receive appropriate and quality care, and as a basis for payment from federal funds. I further understand that payment of such federal funds and continued participation in the government-funded health care programs is conditioned on the accuracy and truthfulness of this information, and that I may be personally subject to or may subject my organization to substantial criminal, civil, and/or administrative penalties for submitting false information. I also certify that I am authorized to submit this information by the Facility on its behalf.

31.     Ms. Moffett was severely malnourished when she was discharged from the Facility on February 8, 2021. EXHIBIT 2.

32.     Dr. Farooq authorized a recertification for Ms. Moffett to receive physical therapy five (5) times per week for six (6) weeks on December 14, 2020, finding physical therapy was a medically necessary service furnished under the plan of treatment while under his care from December 3, 2020 through January 1, 2021.

33.     Dr. Farooq authorized a recertification for Ms. Moffett to receive occupational therapy five (5) times per week for eight (8) weeks on December 14, 2020, finding physical therapy was a medically necessary service furnished under the plan of treatment while under his care from December 1, 2020 through December 30, 2021.

34.     Ms. Moffett did not receive any form of physical or occupational therapy between

        December 8, 2020 and her discharge on February 8, 2021.

35.     There are no records between December 1, 2020 and February 8, 2021 that suggest Ms.

        Moffett's condition improved to such an extent as to render the treatment plans

        authorized by Dr. Farooq inappropriate or inapplicable.

36.     There are no records between December 1, 2020 and February 8, 2021 that suggest Ms.

        Moffett's condition deteriorated to such an extent as to render the treatment plans

        authorized by Dr. Farooq inappropriate or inapplicable.

37.     When Ms. Moffett was discharged, $664.46 remained in her Resident Trust Account.

38.     On February 11, 2021, a check was issued by the Facility from Ms. Moffett's Resident

        Trust Account to the order of "Ashland Nursing" in the amount of $664.46. The

        description for this transaction is listed as "To close account."

39.     Ms. Sheehan oversaw and managed Resident Trust Accounts, including Ms. Moffett's,

        on behalf of the Facility at the time the check was issued to and cashed by the Facility.

40.     Ms. Moffett did not have an outstanding balance at time of discharge that accounts for the

        $664.46 payment to the Facility.

41.     No bill was generated by the Facility for Ms. Moffett in the amount of $664.46, nor do

        her billing records show $664.46 being credited to her account at or around the time of

        her discharge.

42.     Neither Ms. Moffett nor any other member of her family has received a check in the

        amount of $664.46 from the Facility.

43.     The standard measurement for nursing home staffing is hours-per-patient-day (hppd).

44. The Center for Medicare and Medicaid Services ("CMS"), Institute of Medicine, American Nurses' Association, and the Coalition of Geriatric Nursing Organizations have found that facilities need "a minimum of 0.75 RN [hppd], 0.55 LPN hppd, and 2.8 (to 3.0) CNA hppd [or a total of 4.1 total hppd, inclusive of at least 0.75 RN hppd] . . . to prevent harm or jeopardy to residents."

45. In 2017, the Facility's average hppd for Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), and Certified Nursing Assistants ("CNAs") were approximately 0.12, 0.79, and 2.21, respectively.

46. In 2017, the national average hppd for RNs, LPNs, and CNAs were approximately 0.83, 0.86, and 2.45, respectively.

47. In 2017, the Commonwealth's average hppd for RNs, LPNs, and CNAs were approximately 0.77, 1.07, 1.84, respectively.

48. In 2018, the Facility's average hppd for RNs, LPNs, and CNAs were approximately 0.15, 0.75, and 2.24, respectively.

49. In 2018, the national average hppd for RNs, LPNs, and CNAs were approximately 0.68, 0.88, and 2.33, respectively.

50. In 2018, the Commonwealth's average hppd for RNs, LPNs, and CNAs were approximately 0.60, 1.06, and 2.15, respectively.

51. In 2019, the Facility's average hppd for RNs, LPNs, and CNAs were approximately 0.26, 0.64, and 2.47, respectively.

52. In 2019, the national average hppd for RNs, LPNs, and CNAs were approximately 0.65, 0.87, and 2.31, respectively.

53.   In 2019, the Commonwealth's average hppd for RNs, LPNs, and CNAs were approximately 0.26, 1.05, and 2.13, respectively.

54.   As of May 17, 2021, the Facility's reported hppd from 2020 for RNs, LPNs, and CNAs were approximately 0.38, 0.72, and 1.90, respectively.

55.   In 2020, the national average hppd for RNs, LPNs, and CNAs were approximately 0.75, 0.92, and 2.38, respectively.

56.   In 2020, the Commonwealth's average hppd for RNs, LPNs, and CNAs were approximately 0.72, 1.09, and 2.18, respectively.

57.   Among the ten Consulate properties closest in proximity to the Facility, the average hppd for RNs in 2020 was 0.37 – approximately 51% and 49% less than national and state averages, respectively, as of May 17, 2021.

58.   Among the ten Consulate properties closest in proximity to the Facility, the average hppd for LPNs in 2020 was 1.00 – approximately 8.0% less than state averages, as of May 17, 2021.

59.   Among the ten Consulate properties closest in proximity to the Facility, the average hppd for CNAs in 2020 was 1.59 – approximately 33% and 27% less than national and state averages, respectively, as of May 17, 2021.

60.   Between August 6, 2019 and February 8, 2021, Ms. Price and Ms. Kampmann, on behalf of the Facility and at the direction of Consulate and CMC, continued to pursue and authorize admissions to the Facility, despite knowing the Facility's hppd rates were below the minimum levels found by CMS and the other industry professionals to be necessary to "prevent harm or jeopardy" to patients.

61.   Between August 6, 2019 and February 8, 2021, Consulate, CMC, Ms. Price, Ms. Kampmann, and the Director of Nursing did not ensure there was sufficient nursing staff to bring the Facility's hppd to the minimum levels found by CMS and other industry professionals to be necessary to "prevent harm or jeopardy" to patients.

62.   Between August 6, 2019 and February 8, 2021, Consulate and CMC did not provide sufficient funding to the Facility to hire sufficient nursing staff, knowing that doing so would make it impossible for the Facility to both maintain their census and meet the minimum levels found by CMS and other industry professionals to be necessary to "prevent harm or jeopardy" to patients.

63.   Between August 6, 2019 and February 8, 2021, Consulate and CMC adopted policies which reasonably and foreseeably led to the Facility lacking sufficient nursing staff to maintain hppds at or above the minimum levels found by CMS and other industry professionals to be necessary to "prevent harm or jeopardy."

64.   Ms. Moffett had significant expenses relating to medical care, personal care, housing, and transportation following her discharge from the Facility.

65.   Ms. Moffett endured significant pain, suffering, physical deterioration, and emotional trauma as a result of her experiences at the Facility.

66.   The Facility adheres to the Perry & Potter Standards of Practice for Nurses.

67.   The Facility receives Medicare and Medicaid reimbursements.

68.   In addition to the Perry & Potter Standards of Practice for Nurses, the Facility is subject to the standards of care outlined in the various laws and regulations of the United States and the Commonwealth of Virginia in place and effective between August 6, 2019 to February 8, 2021.

69.     The Facility is not financially or managerially independent from Consulate.

70.     CMC is not financially or managerially independent from Consulate.

71.     The Facility is an alter ego for Consulate.

72.     CMC is an alter ego for Consulate.

## COUNT 1: MEDICAL MALPRACTICE - FAILURE TO PROVIDE
## CARE AND ENVIRONMENT THAT PROMOTES QUALITY OF LIFE

73.     The facts alleged in paragraphs 1 through 72 are realleged and incorporated by reference.

74.     Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, and the Director of Nursing
        failed to ensure Ms. Moffett was cared for in a manner and in an environment that
        promotes maintenance or enhancement of her quality of life between August 6, 2019 and
        February 8, 2021, in violation of 42 CFR § 483.10(a)(1).

75.     Consulate, CMC, the Facility, Ms. Price, and Ms. Kampmann willfully and wantonly
        authorized the submission of inaccurate MDS reports filed for Ms. Moffett which
        concealed her weight loss, partially in an effort to protect their quality of care and
        Medicare ratings.

76.     As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) suffered a
        significant decline in physical mobility and range of motion; (2) lost approximately
        18.1% of her body weight in the six months preceding her discharge due to
        malnourishment; (3) suffered several painful pressure injuries of varying stages,
        including but not limited to one Stage II, one Stage III, and one unstageable pressure
        injury in the six months preceding discharge alone; (4) went without important
        medications, treatments, and therapies on multiple occasions; (5) went without proper
        hygiene care on multiple occasions; (6) suffered multiple falls; (7) went several days

without a bowel movement on multiple occasions; and (8) lived with emotional and
physical pain and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 2: MEDICAL MALPRACTICE - FAILURE TO PROTECT
## MS. MOFFETT'S RIGHTS

77.    The facts alleged in paragraphs 1 through 76 are realleged and incorporated by reference.

78.    Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, the Director of Nursing, and
Dr. Farooq failed to protect and promote the rights of Ms. Moffett articulated in the
various subsections of 42 CFR § 483.10 between August 6, 2019 to February 8, 2021, in
violation of 42 CFR § 483.10(a)(1).

79.    As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) suffered a
significant decline in physical mobility and range of motion; (2) lost approximately
18.1% of her body weight in the six months preceding her discharge due to
malnourishment; (3) suffered several painful pressure injuries of varying stages,
including but not limited to one Stage II, one Stage III, and one unstageable pressure
injury in the six months preceding discharge alone; (4) went without important
medications, treatments, and therapies on multiple occasions; (5) went without proper
hygiene care on multiple occasions; (6) suffered multiple falls; (7) went several days
without a bowel movement on multiple occasions; (8) lived with emotional and physical
pain and suffering from her time at the Facility until her death on July 2, 2021; and (9)
suffered the conversion of funds from and mismanagement of her Resident Trust
Account.

## COUNT 3: MEDICAL MALPRACTICE - FAILURE TO PROVIDE
## NECESSARY CARE AND SERVICES, GENERALLY

80.    The facts alleged in paragraphs 1 through 79 are realleged and incorporated by reference.

81.    Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, the Director of Nursing and Dr. Farooq failed to ensure Ms. Moffett was provided with the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being between August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.24.

82.    Consulate, CMC, the Facility, Ms. Price, and Ms. Kampmann willfully and wantonly authorized the submission of inaccurate MDS reports filed for Ms. Moffett with the federal and state government which concealed her weight loss, partially in an effort to protect their quality of care and Medicare ratings.

83.    As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) suffered a significant decline in physical mobility and range of motion; (2) lost approximately 18.1% of her body weight in the six months preceding her discharge due to malnourishment; (3) suffered several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (4) went without important medications, treatments, and therapies on multiple occasions; (5) went without proper hygiene care on multiple occasions; (6) suffered multiple falls; (7) went several days without a bowel movement on multiple occasions; and (8) lived with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 4: MEDICAL MALPRACTICE - FAILURE TO PROVIDE NECESSARY CARE TO PREVENT DIMINISHMENT OF MS. MOFFETT'S ABILITIES IN ADL's

84.    The facts alleged in paragraphs 1 through 83 are realleged and incorporated by reference.

85.    Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, the Director of Nursing and Dr. Farooq failed to ensure Ms. Moffett was provided with the necessary care and

services to ensure that her abilities in ADLs did not diminish between August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.24(a).

86.    As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) lost approximately 18.1% of her body weight in the six months preceding her discharge due to malnourishment; (2) suffered several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (3) went without proper hygiene care on multiple occasions; and (4) lived with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 5: MEDICAL MALPRACTICE - FAILURE TO PROVIDE TREATMENT TO IMPROVE OR MAINTAIN ADLs

87.    The facts alleged in paragraphs 1 through 86 are realleged and incorporated by reference.

88.    Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, the Director of Nursing and Dr. Farooq failed to ensure Ms. Moffett was given the appropriate treatment and services to maintain or improve her ability to carry out the ADLs, including: (1) hygiene, (2) mobility, (3) toileting, and (4) dining, between August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.24(a)(1).

89.    As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) suffered a significant decline in physical mobility and range of motion; (2) lost approximately 18.1% of her body weight in the six months preceding her discharge due to malnourishment; (3) suffered several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (4) went without proper hygiene care on multiple occasions; (5) suffered multiple falls; (6) went days without passing a bowel

movement on multiple occasions; and (7) lived with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 6: MEDICAL MALPRACTICE - FAILURE TO PROVIDE NECESSARY SERVICES FOR NUTRITION, GROOMING, AND HYGIENE

90.    The facts alleged in paragraphs 1 through 89 are realleged and incorporated by reference.

91.    Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, the Director of Nursing and Dr. Farooq failed to ensure Ms. Moffett received the necessary services to maintain good nutrition, grooming, and personal and oral hygiene between August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.24(a)(2).

92.    Consulate, CMC, the Facility, Ms. Price, and Ms. Kampmann willfully and wantonly authorized the submission of inaccurate MDS reports filed for Ms. Moffett which concealed her weight loss, partially in an effort to protect their quality of care and Medicare ratings.

93.    As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) suffered a significant decline in physical mobility and range of motion; (2) lost approximately 18.1% of her body weight in the six months preceding her discharge due to malnourishment; (3) suffered several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (4) went without proper hygiene care on multiple occasions; (5) suffered multiple falls; (6) went days without passing a bowel movement on multiple occasions; and (7) lived with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 7: MEDICAL MALPRACTICE - FAILURE TO PREVENT PRESSURE INJURIES

94.    The facts alleged in paragraphs 1 through 93 are realleged and incorporated by reference.

95.     Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, the Director of Nursing and Dr. Farooq failed to ensure that Ms. Moffett received care, consistent with professional standards of practice, to prevent pressure injuries between August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.25(b).

96.     As a direct and proximate result of the alleged misconduct, Ms. Moffett (1) suffered several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (2) went days without passing a bowel movement on multiple occasions; and (3) lived with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

### COUNT 8: MEDICAL MALPRACTICE - FAILURE TO PROVIDE APPROPRIATE TREATMENT TO MAINTAIN RANGE OF MOTION

97.     The facts alleged in paragraphs 1 through 96 are realleged and incorporated by reference.

98.     Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, the Director of Nursing and Dr. Farooq failed to ensure that Ms. Moffett received appropriate treatment and services to increase range of motion and/or prevent further decrease in range of motion between August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.25(c)(2).

99.     As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) suffered a significant decline in physical mobility and range of motion; (2) suffered several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (3) suffered multiple falls; and (4) lived with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

### COUNT 9: MEDICAL MALPRACTICE - FAILURE TO PROVIDE APPROPRIATE SERVICES TO MAINTAIN MOBILITY

100.    The facts alleged in paragraphs 1 through 99 are realleged and incorporated by reference.

101.    Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, the Director of Nursing and Dr. Farooq failed to ensure that Ms. Moffett received appropriate services, equipment, and assistance to maintain or improve mobility with the maximum practicable independence between August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.25(c)(3).

102.    As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) suffered a significant decline in physical mobility and range of motion; (2) suffered several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (3) suffered multiple falls; and (4) lived with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

### COUNT 10: MEDICAL MALPRACTICE - FAILURE TO MAINTAIN ADEQUATE SUPERVISION OF PATIENTS

103.    The facts alleged in paragraphs 1 through 102 are realleged and incorporated by reference.

104.    Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, and the Director of Nursing failed to ensure that Ms. Moffett received adequate supervision to prevent accidents between August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.25(d)(2).

105.    As a direct and proximate result of the alleged misconduct, Ms. Moffett suffered multiple falls between August 6, 2019 and February 8, 2021, causing her to live with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 11: MEDICAL MALPRACTICE - FAILURE TO ENSURE
## MS. MOFFETT MAINTAINED AN ACCEPTABLE NUTRITIONAL STATUS

106.    The facts alleged in paragraphs 1 through 105 are realleged and incorporated by

reference.

107.    The Facility, Ms. Price, Ms. Kampmann, the Director of Nursing and Dr. Farooq failed to

ensure Ms. Moffett maintained acceptable parameters of nutritional status between

August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.25(g)(1).

108.    Consulate, CMC, the Facility, Ms. Price, and Ms. Kampmann willfully and wantonly

authorized the submission of inaccurate MDS reports filed for Ms. Moffett which

concealed her weight loss in an effort to conceal their collective failure to ensure Ms.

Moffett maintained an acceptable nutritional status.

109.    As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) lost

approximately 18.1% of her body weight in the six months preceding her discharge due

to malnourishment; (2) suffered several painful pressure injuries of varying stages,

including but not limited to one Stage II, one Stage III, and one unstageable pressure

injury in the six months preceding discharge alone; (3) went days without passing a

bowel movement on multiple occasions; and (4) lived with emotional and physical pain

and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 12: MEDICAL MALPRACTICE - FAILURE TO ADHERE TO PROCEDURES
## FOR THE DISPENSING AND ADMINISTRATION OF MEDICATIONS

110.    The facts alleged in paragraphs 1 through 109 are realleged and incorporated by

reference.

111.    The Facility, Ms. Price, Ms. Kampmann, and the Director of Nursing failed to follow

procedures intended to assure the accurate dispensing and administration of medications

needed to meet Ms. Moffett's needs between August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.45(a).

112.    As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) lost approximately 18.1% of her body weight in the six months preceding her discharge due to malnourishment; (2) suffered delayed healing of her several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (3) went without important medications, treatments, and therapies on multiple occasions; and (4) lived with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 13: MEDICAL MALPRACTICE - FAILURE TO ENSURE MS. MOFFETT WAS FREE OF MEDICATION ERRORS

113.    The facts alleged in paragraphs 1 through 112 are realleged and incorporated by reference.

114.    The Facility, Ms. Price, Ms. Kampmann, and the Director of Nursing the Facility failed to ensure that Ms. Moffett was free of significant medication errors between August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.45(f)(2).

115.    As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) lost approximately 18.1% of her body weight in the six months preceding her discharge due to malnourishment; (2) suffered delayed healing of her several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (3) went without important medications, treatments, and therapies on multiple occasions; and (4) lived

with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 14: MEDICAL MALPRACTICE - FAILURE TO ENSURE MS. MOFFETT RECEIVED THREE MEALS PER DAY.

116.    The facts alleged in paragraphs 1 through 115 are realleged and incorporated by reference.

117.    The Facility, Ms. Price, Ms. Kampmann, and the Director of Nursing failed to provide and ensure that Ms. Moffett received three meals daily between August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.60(f)(1).

118.    The Facility, Ms. Price, Ms. Kampmann, and the Director of Nursing failed to ensure Ms. Moffett did not go more than 14 hours between a substantial evening meal and breakfast the following day between August 6, 2019 to February 8, 2021, in violation of 42 CFR § 483.60(f)(2).

119.    Consulate, CMC, the Facility, Ms. Price, and Ms. Kampmann willfully and wantonly authorized the submission of inaccurate MDS reports filed for Ms. Moffett which concealed her weight loss, partially in an effort to protect their quality of care and Medicare ratings.

120.    As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) lost approximately 18.1% of her body weight in the six months preceding her discharge due to malnourishment; (2) suffered several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (3) went days without passing a bowel movement on multiple occasions; and (4) lived with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 15: MEDICAL MALPRACTICE - FAILURE TO PROVIDE
## MEDICALLY NECESSARY PHYSICAL AND OCCUPATIONAL THERAPY

121.  The facts alleged in paragraphs 1 through 120 are realleged and incorporated by
reference.

122.  Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, the Director of Nursing and
Dr. Farooq failed to provide required physical and occupational therapy medically
necessary for Ms. Moffett's care between August 6, 2019 to February 8, 2021, in
violation of 42 CFR § 483.65(a).

123.  As a direct and proximate result of the alleged misconduct in paragraphs 69 through 87
inclusive, Ms. Moffett: (1) suffered a significant decline in physical mobility and range of
motion; (2) suffered several painful pressure injuries of varying stages, including but not
limited to one Stage II, one Stage III, and one unstageable pressure injury in the six
months preceding discharge alone; (3) endured a significant reduction in her abilities to
carry out her ADLs; and (4) lived with emotional and physical pain and suffering from
her time at the Facility until her death on July 2, 2021.

## COUNT 16: NEGLIGENCE - FAILURE TO ADHERE TO FEDERAL, STATE, AND
## LOCAL LAWS AND REGULATIONS

124.  The facts alleged in paragraphs 1 through 123 are realleged and incorporated by
reference.

125.  Consulate, CMC, the Facility, Ms. Price, and Ms. Kampmann had a duty to ensure the
Facility operated and provided services in compliance with all applicable Federal, State,
and local laws, regulations, and codes, and with accepted professional standards and
principles that apply to professionals providing services in long-term care facilities,
pursuant to 42 CFR § 483.70(b).

126. Consulate, CMC, the Facility, Ms. Price, and Ms. Kampmann willfully and wantonly authorized the submission of inaccurate MDS reports filed for Ms. Moffett which concealed her weight loss, partially in an effort to protect their quality of care and Medicare ratings.

127. Consulate, CMC, the Facility, Ms. Price, and Ms. Kampmann failed to adhere to numerous Federal regulations between August 6, 2019 and February 8, 2021, including but not limited to: 42 CFR §§ 483.10, 483.24, 483.25, 483.45, 483.60, 483.65, & 483.70.

128. Consulate, CMC, the Facility, Ms. Price, and Ms. Kampmann's failure to fulfill their duties under § 483.70(b) directly and proximately caused Ms. Moffett to be exposed to medical malpractice and neglect.

129. As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) suffered a significant decline in physical mobility and range of motion; (2) lost approximately 18.1% of her body weight in the six months preceding her discharge due to malnourishment; (3) suffered several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (4) went without important medications, treatments, and therapies on multiple occasions; (5) went without proper hygiene care on multiple occasions; (6) suffered multiple falls; (7) went several days without a bowel movement on multiple occasions; and (8) lived with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 17: NEGLIGENCE - FAILURE TO HIRE SUFFICIENT STAFF TO PROVIDE MEDICALLY NECESSARY CARE

130. The facts alleged in paragraphs 1 through 129 are realleged and incorporated by reference.

131.    Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, and the Director of Nursing had a duty to ensure the Facility employed professionals necessary to carry out the provisions of Federal, State, and local laws and regulations, pursuant to 42 CFR § 483.70(f)(1).

132.    Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, and the Director of Nursing knowingly, willfully, recklessly, and wantonly failed to hire sufficient professionals to meet the minimum hppd levels found by CMS and other industry professionals to be necessary to avoid harm or jeopardy befalling their patients, partially in an effort to increase the Facility's profitability.

133.    As a result of Consulate, CMC, the Facility, Ms. Price, and Ms. Kampmann's knowing, willful, reckless, and wanton admission of additional patients, despite lacking the minimum staff found by CMS and other industry professionals to be necessary to avoid risk of harm or jeopardy befalling their patients, the Facility's nursing staff were rendered incapable of providing Ms. Moffett with the medically necessary time and care.

134.    As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) suffered a significant decline in physical mobility and range of motion; (2) lost approximately 18.1% of her body weight in the six months preceding her discharge due to malnourishment; (3) suffered several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (4) went without important medications, treatments, and therapies on multiple occasions; (5) went without proper hygiene care on multiple occasions; (6) suffered multiple falls; (7) went several days

without a bowel movement on multiple occasions; and (8) lived with emotional and

physical pain and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 18: NEGLIGENCE - CONTINUED TO SEEK NEW PATIENTS DESPITE INSUFFICIENT STAFFING

135.   The facts alleged in paragraphs 1 through 134 are realleged and incorporated by

reference.

136.   Consulate, CMC, the Facility, Ms. Price, and Ms. Kampmann had a duty to ensure the

Facility employed professionals necessary to carry out the provisions of Federal, State,

and local laws and regulations, pursuant to 42 CFR § 483.70(f)(1).

137.   Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, and the Director of Nursing

knowingly, willfully, recklessly, and wantonly continued to seek and admit patients

between August 6, 2019 and February 8, 2021, despite knowing the Facility lacked the

appropriate staffing levels found by CMS and other industry professionals to be

necessary to avoid risk of harm and jeopardy befalling their patients, partially in an effort

to increase the profitability of the Facility.

138.   As a result of Consulate, CMC, the Facility, Ms. Price, and Ms. Kampmann's knowing,

willful, reckless, and wanton admission of additional patients, despite lacking the

minimum staff found by CMS and other industry professionals to be necessary to avoid

risk of harm or jeopardy befalling their current patients, the Facility's nursing staff were

rendered incapable of providing Ms. Moffett with the medically necessary care and time

to which she was entitled under Federal, State, and local laws and regulations.

139.   As a direct and proximate result of the alleged misconduct, Ms. Moffett: (1) suffered a

significant decline in physical mobility and range of motion; (2) lost approximately

18.1% of her body weight in the six months preceding her discharge due to

malnourishment; (3) suffered several painful pressure injuries of varying stages, including but not limited to one Stage II, one Stage III, and one unstageable pressure injury in the six months preceding discharge alone; (4) went without important medications, treatments, and therapies on multiple occasions; (5) went without proper hygiene care on multiple occasions; (6) suffered multiple falls; (7) went several days without a bowel movement on multiple occasions; and (8) lived with emotional and physical pain and suffering from her time at the Facility until her death on July 2, 2021.

## COUNT 19: CONVERSION

140.    The facts alleged in paragraphs 1 through 139 are realleged and incorporated by reference.

141.    At Ms. Moffett's time of discharge, had $664.46 remaining in her Resident Trust Account.

142.    The Facility, Ms. Kampmann, and Ms. Sheehan exercised authority over Ms. Moffett's resident trust account pursuant to 42 CFR § 483.10(f)(10) and the responsibilities and duties delegated to them by the terms of their employment.

143.    Pursuant to 42 CFR § 483.10(f)(10)(v), the Facility, Ms. Kampmann, and Ms. Sheehan were required to convey the remaining $664.46 balance in Ms. Moffett's Resident Trust Account to Ms. Moffett within thirty (30) days of Ms. Moffett's discharge.

144.    Pursuant to 42 CFR § 483.10(f)(10)(iii)(B), the Facility, Ms. Kampmann, and Ms. Sheehan were required to establish and maintain a system that precludes any commingling of resident funds with Facility funds or with the funds of any other person other than the resident.

145. On February 11, 2021, the Facility, Ms. Price, Ms. Kampmann, and Ms. Sheehan issued check number 1543 from Ms. Moffett's Resident Trust Account with "Ashland Nursing" listed as the Payee.

146. Check number 1543 cleared into account number 0000934613384 on February 16, 2021.

147. As of July 9, 2021, neither Ms. Moffett nor any member of her family has received the $664.46 from Ms. Moffett's Resident Trust Account.

148. The Facility, Ms. Kampmann, and Ms. Sheehan failed to convey Ms. Moffett's $664.46 from her Resident Trust Account within thirty (30) days of Ms. Moffett's discharge.

149. The Facility, Ms. Kampmann, and Ms. Sheehan failed to adopt and comply with a system that precludes the commingling of resident funds with the Facility's funds when it conveyed Ms. Moffett's $664.46 from her Resident Trust Account into one of the Facility's corporate accounts.

## COUNT 20: BREACH OF CONTRACT

150. The facts alleged in paragraphs 1 through 149 are realleged and incorporated by reference.

151. Paragraph 1 of the Admissions Agreement signed by Ms. Rodriguez on behalf of Ms. Moffett states, "The [Facility] will provide the Patient with 24 hour nursing and personal care. The care will be what is needed for Patient's health, safety and well-being as required by the [Facility's] license."

152. Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, and the Director of Nursing failed to provide Ms. Moffett with the care she needed for the maintenance of her health, safety, and well-being, as required by the Agreement.

153.   As a result of Consulate, CMC, the Facility, Ms. Price, Ms. Kampmann, and the Director
       of Nursing's failure to abide by the terms of the Agreement, Ms. Moffett: (1) suffered a
       significant decline in physical mobility and range of motion; (2) lost approximately
       18.1% of her body weight in the six months preceding her discharge; (3) suffered several
       painful pressure injuries of varying stages, including but not limited to one Stage II, one
       Stage III, and one unstageable pressure injury in the six months preceding discharge
       alone; (4) went without important medications on multiple occasions; (5) went without
       proper hygiene care on multiple occasions; (6) suffered multiple falls; and (7) lived with
       emotional and physical pain and suffering from her time at the Facility until her death on
       July 2, 2021.

154.   Ms. Moffett lacked the capacity to waive Consulate, CMC, the Facility, Ms. Price, Ms.
       Kampmann, and the Director of Nursing's breach of contract between August 6, 2019
       and February 8, 2021 due to her dementia diagnosis.

155.   Ms. Rodriguez was unable to waive Consulate, CMC, the Facility, Ms. Price, Ms.
       Kampmann, and the Director of Nursing's breach of contract between August 6, 2019
       and February 8, 2021, because Ms. Rodriguez lacked the authority to waive Ms.
       Moffett's contractual and legal rights as her statutory healthcare proxy.

156.   Paragraph 14 of the Agreement defines the Facility's basic daily charges as including,
       *inter alia*, nursing services.

157.   The Facility lists "Basic Charges" on Ms. Moffett's bills as "Room and Board."

158.   Ms. Moffett and her insurers were billed hundreds of thousands of dollars for Ms.
       Moffett's "Room and Board" between August 6, 2019 and her discharge on February 8,
       2021.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for the following relief:

1.   Judgment entered in favor of Plaintiff and against Defendants on Counts 1-20 of this

Complaint and an award of compensatory damages not less than $2,000,000.00 and an

award of punitive damages not less than $350,000.00;

2.   An award of prejudgment interest, attorney fees, costs and post-judgment interest in favor

of Plaintiff and against Defendants; and

3.   Such further and other legal and equitable relief as the Court may deem just and

necessary under the circumstances.


Date: _____          By: KERRY J. MCCLUNG, ESQ.



/s/_____
Kerry J. McClung, Esq.
VSB #89387
Attorney for the Estate of Anita E. Moffett
McClung & Associates, PLLC
4122 East Parham Road, Suite A
Henrico, Virginia 23228
ph: (804) 548-6565
f: (804) 800-2111
kerry@mcclung.law

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of August, 2021, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. I will then send the document and a notification of such filing (NEF) to the following parties via private process server:

Ashland Facility Operations, LLC
d/b/a Ashland Nursing and Rehabilitation Center
c/o Corporation Service Company
100 Shockoe Slip, Fl 2
Richmond, VA 23219-4100

CMC II, LLC
c/o Corporation Service Company
100 Shockoe Slip, Fl 2
Richmond, VA 23219-4100

Lavie Care Centers, LLC
d/b/a Consulate Health Care
c/o Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301

Elizabeth Price
4403 Forest Hill Avenue
Richmond, VA 23225

Leanne Kampmann
906 Thompson Street
Richmond, VA 23225

Angela McClain
906 Thompson Street
Richmond, VA 23225

Sandra Sheehan
906 Thompson Street
Richmond, VA 23225

Dr. Mohammad Farooq
1714 E. Hundred Road
Ste. 101
Chester, VA 23836

/s/ _____

Kerry J. McClung, Esq.
VSB #89387
Attorney for the Estate of Anita E. Moffett
McClung & Associates, PLLC
4122 East Parham Road, Suite A
Henrico, Virginia 23228
ph: (804) 548-6565
f: (804) 800-2111
kerry@mcclung.law